# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Howard O. Kieffer,

        Plaintiff,

    v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 14-3192 ADM/LIB

Tundra Storage LLC, Darryl Jorgenson,
Tim Jorgenson, Tim Jorgenson Ent.,
Richard K. Hocking, Rels Title, Teresa Warren,
J.S. Realty, Inc., Julie Sathers, E/Z Storage Co.,
Leanne Dedrick, Susan Ginsburg,
Darryl Jorgenson Realty, LLC, and Does 1–10.

        Defendants.

_____

Howard O. Kieffer, *pro se.*

Brooke D. Anthony, Esq. and Amelia R. Selvig, Esq., Anthony Ostlund Baer & Louwagie PA, Minneapolis, MN, on behalf of Defendants Tundra Storage LLC, Darryl Jorgenson, Tim Jorgenson, Tim Jorgenson Ent., and Darryl Jorgenson Realty, LLC.

Richard K. Hocking, Esq., Richard K. Hocking, PA, Lakeville, MN, on behalf of himself.

Brian M. Sund, Esq., Morrison Sund PLLC, Minnetonka, MN, on behalf of Defendants Rels Title and Teresa Warren.

Eric S. Johnson, Esq. and Robert R. Kanuit, Esq., Fryberger, Buchanan, Smith & Frederick, PA, Duluth, MN, on behalf of Defendants J.S. Realty, Inc. and Julie Sathers.

Michael W. Haag, Esq., Foley & Mansfield, PLLP, Minneapolis, MN, on behalf of Defendant E/Z Storage Co.

Jerome D. Feriancek, Esq., Thibodeau Johnson & Feriancek, PLLP, Duluth, MN, on behalf of Defendant Leanne Dedrick.

Scott A. Witty, Esq. and John D. Kelly, Esq., Hanft Fride PA, Duluth, MN, on behalf of Defendant Susan Ginsburg.

_____

## I.  INTRODUCTION

On October 15, 2015, the undersigned United States District Judge took this matter under

advisement on Defendants' Motions to Dismiss [Docket Nos. 42, 50, 60, 67, 79, 96, and 111].[1]

For the reasons stated herein, Defendant Dedrick's Motion [Docket No. 96] is granted in part

and denied in part. The Motions of all other Defendants are granted.

## II.  BACKGROUND

### A.  The Complaint

Plaintiff Howard Kieffer ("Kieffer") is currently incarcerated in a federal correctional

institution in Colorado.  Am. Compl. [Docket No. 17].  This action arises from events

concerning the dispersion or sale of Kieffer's personal and real property while he was

incarcerated.  Kieffer alleges that he, along with his now ex-wife Defendant Leanne Dedrick,

entered into a Contract for Deed with Defendant Tundra Storage LLC ("Tundra") for the storage

of personal property.  Id. ¶¶ 1–2.  Kieffer claims that he was wrongfully locked out of the storage

unit and his property was sold or disposed of in violation of the Contract for Deed.  Id. ¶¶ 6, 13.

Kieffer makes similar allegations about property stored with Defendant EDSA Storage LLC

("EDSA").[2]  Additionally, Kieffer alleges certain Defendants improperly sold real property

located in Duluth, Minnesota in which Kieffer maintained a legal interest.  Id. ¶¶ 26–35.

---

[1] Tundra Storage LLC, Tim Jorgenson, Tim Jorgenson Enterprises, Darryl Jorgenson, and Darryl Jorgenson Realty, LLC's Motion to Dismiss [Docket No. 42] Counts 1–3 and 5–7; Richard K. Hocking's Motion to Dismiss [Docket No. 50] Counts 1–3 and 5–7; Susan Ginsburg's Motion to Dismiss [Docket No. 60] Counts 5–7; J.S. Realty, LLC and Julie Sathers' Motion to Dismiss [Docket No. 67] Counts 5–7; Dataquick Title LLC and Teresa Warren's Motion to Dismiss [Docket No. 79] Counts 5–7; Leanne Dedrick's Motion to Dismiss [Docket No. 96]; and EDSA Storage, LLC's Motion to Dismiss [Docket No. 111].

[2] Kieffer directs his claims for this entity to "E/Z Storage Co."  Am. Compl. ¶ 14.  EDSA answered, claiming that it was improperly served as E/Z Storage Co. and "this entity may or may not exist, but service of process upon EDSA Storage, LLC (characterizing it as E/Z Storage Co.) does not qualify as service upon E/Z Storage Co."  EDSA Answer [Docket No. 40] ¶ 2.  In its Motion to Dismiss, EDSA responds to the claims pled against E/Z Storage.

**B. Tundra Defendants and the Contract for Deed[3]**

Turning first to the allegations related to the Tundra storage unit, in May of 2009 Kieffer and Dedrick entered into a Contract for Deed with Tundra for a storage unit identified as Unit 20 in the Tundra Storage Condominiums of Hermantown.  Id. ¶¶ 1–2; Anthony Aff. [Docket No. 44] Ex. A.  Kieffer alleges that he made payments pursuant to the Contract for Deed until 2012 and that he and Dedrick "stood ready, willing and able to carry out their obligations."  Am. Compl. ¶¶ 3–4.  Nevertheless, the public records of the Office of the Registrar of Titles in St. Louis County show that in 2011 Tundra initiated the statutory process for cancelling the Contract for Deed pursuant to Minn. Stat. § 559.21.  See Anthony Aff. Ex. C.  On February 23, 2011, Defendant Richard Hocking (Tundra's attorney) mailed a Notice of Cancellation of Contract for Deed and a Notice and Acknowledgment of Service form to Dedrick.  Id.  On March 14, 2011, Dedrick signed the Acknowledgment of Service form.  Id.  Subsequently, on March 16, 2011, the Sheriff of Burlington County, New Jersey served the Notice of Cancellation on Kieffer because he was incarcerated in New Jersey at the time.  Id.  Kieffer acknowledges that he received the Notice of Cancellation, but does not allege that he took formal action to challenge the Cancellation within the time period required under Minn. Stat. § 559.21.

On June 20, 2011, Tundra filed an Eviction Action Complaint against Kieffer and Dedrick in Minnesota District Court for St. Louis County, Sixth Division (the "State Eviction Action").  Id. Ex. D.  The state court subsequently issued an Eviction Summons to Kieffer and

---

[3] Kieffer refers to Tundra, Darryl Jorgenson, Tim Jorgenson, Darryl Jorgenson Realty, Tim Jorgenson Ent., and Richard Hocking collectively as the "Tundra Defendants."  See Am. Compl. ¶ 9.  Hocking answered and moved separately, although he joined in the other Tundra Defendants' arguments.  Hocking is included in the "Tundra Defendants" for this analysis.

3

Dedrick.  Id.  Judge David E. Ackerson issued an Order in the State Eviction Action in favor of

Tundra on July 1, 2011, finding that "Notice to vacate was properly given and Defendant has

failed to vacate said property."  Id. Ex. F.  Shortly thereafter, on July 13, 2011, the state court

issued an Order to Vacate under Minn. Stat. § 504B.361 and the sheriff executed the eviction.

Id. Ex. G.  On July 21, 2011, Richard Hocking filed an affidavit with the state court attesting that

the statutory conditions for cancellation of the Contract for Deed were satisfied.  Id. Ex. C.

## C.  Procedural Background

Kieffer initiated this action on August 18, 2014.  Compl. [Docket No. 1].  On February 5,

2015, Kieffer filed a First Amended Complaint asserting claims for breach of contract,

conversion, constructive trust, breach of fiduciary duty, fraud, intentional misrepresentation and

fraudulent concealment, and declaratory relief.  See generally Am. Compl.  Defendants now

bring motions to dismiss all or portions of Kieffer's Amended Complaint.

## III.  DISCUSSION

### A.  Motion to Dismiss

#### 1.  Matters Outside the Pleading

Ordinarily, when reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court

may not consider matters outside the pleadings without converting the motion to one for

summary judgment.  See Fed. R. Civ. P. 12(b)(6).  The facts noted above pertaining to the

cancellation of the Contract for Deed and subsequent eviction action were not included in

Kieffer's Amended Complaint.  Kieffer argues the Court should not consider the documents

relating to the cancellation of the Contract for Deed and State Eviction Action.  See Pl.'s

Responsive Mem. Opp'n Mot. Dismiss [Docket No. 140] 21–22.  The Tundra Defendants

counter that the documents are all properly before the Court because they are either in the public record, court orders, or "embraced by Plaintiff's allegations of cancellation and eviction." Tundra Def.s' Reply Mem. Supp. Mot. Dismiss [Docket No. 148] 2, n.1.

It is well-established that on a motion to dismiss, a court may refer to public records and documents to which the complaint refers. Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (stating that "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered in a 12(b)(6) motion). Here, the Amended Complaint references the Contract for Deed and thus the contract itself (Exhibit A of the Anthony Affidavit) is necessarily embraced by the pleadings. See Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[T]he contracts upon which [a] claim rests . . . are evidently embraced by the pleadings."). The Court may also properly consider the state court documents in the State Eviction Action (Exhibits D, F, and G of the Anthony Affidavit) and documents filed with the Office of the Registrar of Titles in St. Louis County, Minnesota pertaining to the cancellation of the Contract for Deed (Exhibit C of the Anthony Affidavit) because they are public records. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").[4]

However, the Court declines the Tundra Defendants' request to consider additional materials— Anthony Affidavit Exhibit B (a letter from Kieffer to Hocking seeking clarification

---

[4] Kieffer does not challenge the authenticity of the State Eviction Action court documents (Exhibits D, F, and G), but does claim that he was never served with such documents. Pl.'s Responsive Mem. Opp'n Mot. Dismiss at 9.

regarding the outstanding amount under the Contract and acknowledging Notice of

Cancellation), Exhibit E (a waiver of rights related to the stored property executed by Dedrick),

and Exhibit H (a letter to Kieffer indicating that Tundra will dispose of his property in storage).

Such materials cannot be considered as embraced by the pleadings simply because they relate to

the claims asserted.  See BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir.

2003) ("Most courts . . . view 'matters outside the pleading' as including any written or oral

evidence in support of or in opposition to the pleading that provides some substantiation for and

does not merely reiterate what is said in the pleadings." (quoting Gibb v. Scott, 958 F.2d 814,

816 (8th Cir. 1992)) .

### 2.  Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in

the light most favorable to the nonmoving party, and the facts alleged in the complaint must be

taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825

F. Supp. 870, 879–80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the

claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

A pleading must contain "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that

the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Determining whether a complaint states a plausible claim for relief is "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Id.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to

relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).[5]

## B.  Res Judicata

The Tundra Defendants first argue that all of Kieffer's claims asserted against Tundra,

Tim Jorgenson, and Darryl Jorgenson (Counts 1–3 and 5–7), are barred by the doctrine of res

judicata.[6]  Under Minnesota law, "[r]es judicata precludes parties from raising subsequent claims

---

[5] Kieffer argues that the Motions to Dismiss brought by Defendants Ginsburg, J.S. Realty, Sathers, Dataquick Title, LLC, Warren, and EDSA are untimely because these Defendants filed answers prior to filing their Motions to Dismiss.  Kieffer therefore claims that these Motions are "technically inappropriate."  The Court will consider these Motions and treat them as Motions for Judgment on the Pleadings as brought under 12(c).  See Ali v. Frazier, 575 F. Supp. 2d 1084, 1089 (D. Minn. 2008) ("[A]s long as the defense of failure to state a claim has been asserted in the answer, federal courts routinely consider defendants' post-answer motions raising the defense 'although technically they are no longer Rule 12(b) motions.'") (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004)).  Such a conclusion does not prejudice Kieffer, as a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6), with the distinction between the two motions being "purely formal."  See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

Kieffer additionally argues that Dedrick's Motion to Dismiss is improper.  Dedrick received two extensions of time to answer [Docket Nos. 35 and 86], with the final deadline set at June 11, 2015.  Instead of answering at that time, Dedrick filed her Motion to Dismiss.  According to Kieffer, Dedrick's Motion is untimely as the extension only pertained to her potential answer, not a motion to dismiss.  Dedrick's Motion may proceed.  The Court agrees with the reasoning of other courts within the Eighth Circuit that "[a]ny effective extension of time granted to a defendant to file an answer, such [as an] extension, preserves the right to move under 12(b)."  Cheval Int'l v. SmartPak Equine, LLC, No. Civ. 14-5010, 2015 WL 798968, at *2 (D. S.D. Feb. 26, 2015) (quoting Gray v. Lewis & Clark Expeditions, Inc., 12 F. Supp. 2d 993, 995 (D. Neb. 1998)).

[6] The Tundra Defendants do not raise the res judicata argument as to the remaining Tundra Defendants—Darryl Jorgenson Realty and Tim Jorgenson Enterprises.  These entities

in a second action when:  (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." Brown-Wilbert Inc. v. Copeland Buhl & Co., P.L.L.P., 732 N.W.2d 209, 220 (Minn. 2007) (internal quotation omitted).  Assuming without deciding that the claims against the Tundra Defendants are not barred by res judicata, they nevertheless fail based on the pleadings and public record as explained fully below.

## C.  Failure to State a Claim

### 1.  Breach of Contract

Count 1 asserts a breach of contract claim against the Tundra Defendants.  Kieffer claims that Defendants received payments under the Contract for Deed until at least 2012 and that "[a]t all times relevant to this action, Mr. and/or Mrs. Kieffer, or their agent, stood ready, willing and able to carry out their obligations pursuant to the . . . Contract for Deed."  Am. Compl. ¶¶ 3–4. Kieffer therefore maintains the Tundra Defendants and Hocking breached the Contract for Deed when they refused to accept further payments and "locked out Mr. and Mrs. Kieffer from the premises."  Id. ¶ 6.

The Tundra Defendants argue that the claim fails for several reasons.  First, to the extent the claim is pled against parties other than Tundra, Defendants contend that the contract is unenforceable against non-parties to the contract.  Second, Defendants argue that the claim as it pertains to Tundra additionally fails for the reason that Kieffer cannot assert a claim on a

---

were not parties to the Contract for Deed and therefore did not participate in the State Eviction Action.

statutorily cancelled contract.  Defendants are correct.

To assert a breach of contract claim, a plaintiff must establish "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant."  Lyon Fin. Servs. Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014) (quoting Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011)).  However, "it is the general rule that contract provisions do not create duties to strangers to the contract."  Rausch v. Julius B. Nelson & Sons, Inc., 149 N.W.2d 1, 7 (Minn. 1967).

Here, the parties to the Contract for Deed were Tundra Storage, LLC, Kieffer, and Leanne Dedrick.  See Anthony Aff., Ex. A.  Indeed, Kieffer admits as much.  See Pl.'s Responsive Mem. Opp'n Mot. Dismiss at 23 (stating "only one of the Tundra Defendants, Tundra Storage, LLC, was a party to the Contract for Deed").  Breach of contract claims asserted against nonparties to the contract fail.  See Commercial Assoc., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 783 (Minn. Ct. App. 2006) (holding that a party cannot be liable under a breach of contract claim when it was not a party to the contract at issue); O'Brien Entm't Agency, Inc. v. Wolfgramm, 407 N.W.2d 463, 466 (Minn. Ct. App. 1987) (finding a contract unenforceable against certain individuals "because none of [those individuals] signed the . . . agreement and it therefore does not comport with the statute of frauds").

Kieffer attempts to circumvent this conclusion by alleging liability based on the other Tundra Defendants' "prior and/or subsequent involvement" in the contract.  Pl.'s Responsive Mem. Opp'n Mot. Dismiss at 23.  According to Kieffer,  because Tim Jorgenson Enterprises "assumed control over the premises" and Darryl Jorgenson Realty, LLC is his successor in

interest in the storage unit, these parties are also liable for the alleged breach.  Id.  Furthermore, Kieffer argues that Tim and Darryl Jorgenson are subject to liability because they individually conducted negotiations on behalf of Tundra Storage, LLC.  Id.

These arguments lack merit.  An individual participating in preliminary contract negotiations or somehow benefitting from the existence of a contract does not cause that individual to be a party to the contract.  See Wolfgramm, 407 N.W.2d at 467 ("While the record indicates that Vake was involved in the discussions preliminary to the contract signing, she is not individually identified on the contract and she did not sign the agreement.  The contract is not enforceable against her."); see also McCartney v. Richfield Bank & Trust Co., No. C1-00-1467, 2001 WL 436154, at *5 (Minn. Ct. App. May 1, 2001) ("In general, persons who are not parties to a contract but benefit from its performance are merely incidental beneficiaries and have no rights under the contract.") (citing Wurm v. John Deere Leasing Co., 405 N.W.2d 484, 486–87 (Minn. Ct. App. 1987)).  To the extent Kieffer asserts his breach of contract claim against Darryl Jorgenson, Tim Jorgenson, Darryl Jorgenson Realty, Tim Jorgenson Enterprises, and Richard Hocking, the claim is dismissed as these entities and individuals were not parties to the Contract for Deed.

As to Tundra, Kieffer maintains that it breached the Contract for Deed when it failed to accept deficiency payments and to communicate with Kieffer and Dedrick.  This claim also fails; Kieffer cannot assert a breach claim pursuant to a contract that has been statutorily cancelled.  Pursuant to Minn. Stat. § 559.21,  "the seller may terminate the contract by serving upon the purchaser or the purchaser's personal representatives or assigns, within or outside of the state, a notice specifying the conditions in which default has been made."  Minn. Stat. § 559.21, subd.

10

2a.  The notice must further advise the purchaser that the contract will terminate within 60 days unless the purchaser takes certain actions to remedy the default.  Id.  Pursuant to the statute, a defaulting purchaser may petition a court to enjoin further termination proceedings during the 60 day statutory redemption period.  Id. subds. 2–3.  If a buyer satisfies the requirements specified in the cancellation notice prior to the deadline, the contract is reinstated; if not, the contract is terminated.  Id. subd. 4; see also Sundberg v. Sundberg, No. A05-1845, 2006 WL 1806394, at *3 (Minn. Ct. App. July 3, 2006) (explaining the statutory cancellation process under Minn. Stat. § 559.21).  Critically, under Minnesota law "once statutory notice has been served and cancellation effected, all rights under a contract for deed are terminated."  See Demmaj v. Elasky, A04-2424, 2006 WL 163441, at *4 (Minn. Ct. App. Jan. 24, 2006) (citing Zirinsky v. Sheehan, 413 F.2d 481, 484 (8th Cir. 1969)); see also Gatz v. Frank M. Langenfeld & Sons Constr., Inc., 356 N.W.2d 716, 718 (Minn. Ct. App. 1984) ("It is long-standing law in Minnesota that once statutory notice has been served and cancellation effected, all rights under a contract for deed are terminated.").

Kieffer argues that the cancellation was somehow flawed.  This is not so.  Based on public records, the Court concludes that the Contract for Deed was properly statutorily cancelled in compliance with Minn. Stat. § 559.21.   The Contract specifically provided that Tundra could seek termination and cancellation by notice upon default:

> The time of performance by Purchaser of the terms of this Contract is an essential part of this Contract.  If Purchaser fails to timely perform any term of this Contract, Seller may, at Seller's option, elect to declare this Contract cancelled and terminated by notice to Purchaser in accordance with applicable law or elect any other remedy available at law or in equity.  If Seller elects to terminate this Contract, all right, title, and interest acquired under this Contract by Purchaser shall then cease and terminate . . .

Anthony Aff., Ex. A. ¶ 17.  Moreover, the Notice of Cancellation adhered to the requirements of Minn. Stat. § 559.21, notifying Kieffer that he either must (1) cure the deficiency related to his account or (2) obtain a court order to avoid cancellation.  Id., Ex. C.  Kieffer was served with the Notice while in prison on March 16, 2011.  Anthony Aff., Ex. C.  Kieffer failed to cure the deficiencies or secure a court order and, accordingly, on May 16, 2011 (60 days after service) the Contract for Deed terminated.  Id.

Beyond his vague contention that the public records are "incomplete," Kieffer provides no authority for his contention that this Court should disregard the proper statutory cancellation of the Contract for Deed.  See Pl.'s Responsive Mem. Opp'n Mot. Dismiss at 23.  Indeed, Minnesota law is clear that a party who fails to take action on a cancellation notice during the statutory redemption period cannot later raise claims that should have been brought during the 60 day redemption period.  See Sundberg, 2006 WL 1806394, at *2 (Minn. Ct. App. July 3, 2006) ("[A]ppellant failed to take any action on the contract for deed or the cancellation notice during the statutory redemption period, and he cannot now [in an eviction action] resurrect claims that should have been presented then.").  Therefore, even assuming Kieffer's allegations are true, they still fail as Kieffer no longer maintains rights under the statutorily cancelled Contract for Deed.  Kieffer's claim for breach of contract against Tundra is dismissed.[7]

---

[7] Defendants Dedrick and EDSA also move to dismiss the breach of contract claim.  See Dedrick's Mem. Supp. Mot. Dismiss [Docket No. 98] 3–4; EDSA Storage LLC's Mem. Supp. Mot. Dismiss [Docket No. 106] 4.  However, this claim was not pled against Dedrick or EDSA. Although the count includes factual references to Dedrick making payments on the Contract for Deed, it solely alleges that the Tundra Defendants breached their obligations under the contract. Therefore, no breach of contract claims were asserted against Dedrick or EDSA.

### 2. Conversion

In his conversion claim, Kieffer alleges that the Tundra Defendants improperly accessed his storage unit, removed his personal property valued at over $400,000, and "sold, relocated, or otherwise disposed of or converted this property." Am. Compl. ¶¶ 11–13.

Conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession, and the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 585 (Minn. 2003) (internal quotations omitted). To prevail on a conversion claim, a plaintiff must establish two elements: "(1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994) (citations omitted).

As to the Tundra Defendants, the conversion claim fails because the Tundra Defendants' removal of Kieffer's personal property occurred after the cancellation of the Contract for Deed and the judgment in the State Eviction Action, and thus was legally justified. Pursuant to Minn. Stat. § 504B.285, Tundra was entitled to repossess the real property "after termination of contract to convey the property." Minn. Stat. § 504B.285, subd. 1(a)(ii). Tundra filed an eviction action on June 21, 2011, in Minnesota District Court for St. Louis County, Sixth Division. Anthony Aff., Ex. D. On July 1, 2011, the state court judge determined "notice to vacate was properly given and Defendant has failed to vacate said property." Id., Ex. F. Shortly thereafter, on July 13, 2011, the court issued a Writ of Recovery of Premises and Order to Vacate under Minn. Stat. § 504B.361. Because the Tundra Defendants were acting in

compliance with a court order, they can hardly be considered to have acted "without lawful justification." See City of Mahtomedi v. One 1995 Chevrolet Blazer, VIN: #1GNCT18W9S21241110, 609 N.W.2d 913, 915 (Minn. Ct. App. 2000) (holding that no conversion occurred when a party acted in compliance with a court order as the party did not act without lawful justification).

Kieffer does not allege in his Amended Complaint that the statutory requirements of the eviction process were unsatisfied, only that the Tundra Defendants improperly disposed of his property. However, in his memorandum, Kieffer argues that "no evidence exists, sufficiently authenticated, that shows that any purported eviction process was legally justified." Pl.'s Responsive Mem. Opp'n Mot. Dismiss at 25. Additionally, Kieffer asserts that he was never properly served in the State Eviction proceeding.

Kieffer's arguments are unavailing. As discussed above, the court may take judicial notice of state court orders. See Stahl, 327 F.3d at 700. In his Eviction Order, Judge Ackerson found that the "Notice to Vacate was properly given and Defendants have failed to vacate said property." Anthony Aff., Ex. F. In sum, nothing in Kieffer's Amended Complaint gives rise to a plausible allegation that the eviction process—documented in the public record—was somehow procedurally flawed so that he retains ownership interest in the disputed property. The conversion claim as pled against the Tundra Defendants is dismissed.

Kieffer further asserts conversion claims against Defendants EDSA, Dedrick, and Ginsburg related to property separate and apart from the property subject to the Contract for

Deed.[8]  The Amended Complaint alleges that Dedrick and Ginsburg were in possession of certain personal property of Kieffer's valued at over $75,000, stored that property with former Defendant Ken Page, and that "in 2013 or 2014, PAGE and/or DEDRICK, GINSBURG, one [or] more DOE DEFENDANTS, or their agent, sold, relocated, or otherwise disposed of, or converted Mr. Kieffer's personal and business property . . . to their own use and/or benefit." Am. Compl. ¶ 21.[9]

The claim as pled against EDSA is dismissed for failure to satisfy pleading standards. The Amended Complaint treats EDSA and Page as one in the same, but includes no factual allegations of support this treatment.  See Am. Compl. ¶ 14 (defining "Defendants E/Z STORAGE CO., KEN PAGE" as "collectively, 'PAGE'").  Thus, the Amended Complaint does not articulate any factual basis to conclude that EDSA somehow interfered with Kieffer's property interest unlawfully.   The  conversion claim will be dismissed as to EDSA for pleading deficiencies.

The conversion claim against Dedrick, however, will survive at this time.  Although the factual allegations in the Amended Complaint are sparse, they amount to more than a threadbare recitation of a conversion claim against Dedrick.  Dedrick argues that "[a]t best, the [Amended] Complaint alleges a transfer of certain items on behalf of Defendant Dedrick to an alternative location." Def. Leanne Dedrick's Mem. Supp. Mot Dismiss at 4.  This assertion ignores Kieffer's

_____

[8] Ginsburg does not move to dismiss Counts 2–4 at this time, stating that these claims will be addressed in a subsequent dispositive motion.  Mem. Supp. Mot. Dismiss [Docket No. 62] 2.

[9] All claims against Ken Page have been previously dismissed for failure to effect service and for lack of prosecution.  See Ord. [Docket No. 161].

allegations that Dedrick entered into a contractual relationship with Page to store the alleged

personal property, Dedrick ceased payments on the contract and instructed Page that Kieffer

would make remaining payments, and Dedrick subsequently sold or relocated his property.  See

Am. Compl. ¶¶ 14–21.  These allegations are more than mere "labels and conclusions."

Twombly, 550 U.S. at 555.  Therefore, Dedrick's motion to dismiss the conversion claim is

denied.

### 3.  Constructive Trust

In his constructive trust claim, Kieffer asserts that the Tundra Defendants, Dedrick, and

EDSA, after converting his stored personal property, "hold the proceeds from said conversion or

the market value of such in other assets in constructive trust for him."  Am. Compl. ¶¶ 23, 24.

A constructive trust is an equitable doctrine, having "no existence in fact as a trust but is

only a fiction adopted by equity as an unjust-enrichment, rectifying remedy."  Knox v. Knox, 25

N.W.2d 225, 232 (Minn. 1946).  Under this equitable remedy, the Court may impose a

constructive trust "to prevent unjust enrichment of a person holding property under a duty to

convey it or use it for a specific purpose."  Wright v. Wright, 311 N.W.2d 484, 485 (Minn. 1981)

(citing Koberg v. Jones, 279 Minn. 406, 414 (Minn. 1968)).  "Under Minnesota law, a

constructive trust arises in favor of the person equitably entitled to property whenever legal title

is obtained through fraud, oppression, duress, undue influence, force, crime, or taking improper

advantage of a confidential or fiduciary relationship."  Hanson v. F.D.I.C., 13 F.3d 1247, 1253

(8th Cir. 1994) (emphasis in original) (citing Wright, 311 N.W.2d at 485; Spiess v. Schumm, 448

N.W.2d 106, 108 (Minn. Ct. App. 1989)).  A court may impose a constructive trust when there is

"clear and convincing evidence that it would be morally wrong for the property holder to retain"

the property at issue.  <u>Spiess</u>, 448 N.W.2d at 108 (quotation omitted).

The Tundra Defendants correctly contend that Kieffer's claim fails because the Tundra Defendants had no fiduciary relationship with Kieffer and did not wrongfully obtain Kieffer's property.  Kieffer alleges no facts to establish that a fiduciary relationship existed between him and the Tundra Defendants.  Indeed, the arms-length negotiation of a contract does not automatically give rise to a fiduciary duty.  <u>See</u> <u>Baker v. Sunbelt Bus. Brokers</u>, No. A07-514, 2008 WL 668608, at *9 (Minn. Ct. App. March 11, 2008).  Moreover, Kieffer cannot claim that the property at issue was obtained through "fraud, oppression, duress, undue influence, force, crime, or similar means," as the eviction process adhered to the statutory requirements and was completed in accordance with a court order.  Kieffer has failed to state a constructive trust claim against the Tundra Defendants upon which relief can be granted, and the claim is dismissed.

The constructive trust claim against EDSA fails for the same reasons as articulated in the conversion claim.  Kieffer has alleged no facts that give rise to a plausible allegation that Page and EDSA are the same entity.  Kieffer's claim for constructive trust as pled against EDSA is also dismissed.

The motion to dismiss the constructive trust claim asserted against Dedrick is denied. Dedrick argues there are "no facts to support a plausible allegation that Defendant Dedrick possesses any items or property owned or claimed by Plaintiff or that she obtained any benefit holding Plaintiff's property under a duty to convey."  Def. Dedrick's Mem. Supp. Mot. to Dismiss at 5.  However, Kieffer bases his constructive trust claim on Dedrick's conversion of his property, and the Court has found that Kieffer has adequately pled a claim of conversion against Dedrick.  Additionally, Kieffer has sufficiently alleged that Dedrick received some benefit from

her control of Kieffer's property as she "holds the proceeds from said conversion."  Am. Compl. ¶ 24.  This is sufficient to sustain a plausible claim for constructive trust at this stage of the litigation.

### 4.  Breach of Fiduciary Duty

Kieffer's breach of fiduciary duty claim centers on the sale of real property located in Duluth, Minnesota in which Kieffer claims an interest.  In sum, Kieffer alleges that Dedrick, Ginsburg, J.S. Realty LLC, Sathers, Warren, and Dataquick Title LLC ("Dataquick")[10] breached fiduciary duties owed to Kieffer by their involvement with the sale of the real property and disbursement of proceeds from that sale.  Only Dedrick, his ex-wife, moves to dismiss the breach of fiduciary duty claim at this time.[11]

To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary duty, breach, causation, and damages.  See Padco, Inc. v. Kinney & Lange, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989) (breach of fiduciary duty claim has same elements as negligence claim); see also Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982)

---

[10] Dataquick Title LLC was formerly known as Rels Title, Inc.  See Mem. Supp. Dataquick Title LLC's and Teresa Warren's Mot. Dismiss [Docket No. 80] 1.

[11] In their Motion, Dataquick and Warren moved to dismiss only Counts 5–7.  See Notice Joinder Tundra Def.s' Mot. Dismiss [Docket No. 79]; see also Mem. Supp. Dataquick Title LLC's and Teresa Warren's Mot. Dismiss at 1 ("The DT Defendants will address Count 4 of the Complaint in a separate dispositive motion.").  In their Reply Memorandum, Dataquick and Warren, for the first time, argue that the Court should also dismiss Count 4 for Breach of Fiduciary Duty as pled against them.  See Reply Mem. Supp. Mot. Dismiss [Docket No. 145] 9–10.  Because these Defendants have not properly moved to dismiss Count 4 and Kieffer has not had an opportunity to respond, the Court declines to address these arguments.  See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 878 (D. Minn. 2007) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.").  Defendant EDSA also moves to dismiss breach of fiduciary duty.  See EDSA Storage, LLC's Mem. Supp. Mot. Dismiss at 6.  However, this claim was not pled against EDSA.

(stating negligence elements).  "A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal."  <u>Stark v. Equitable Life Assurance Co. of the United States</u>, 285 N.W. 466, 470 (Minn. 1939) (quotation omitted).  In other words, " [a] fiduciary relationship has two characteristics: 'superiority of knowledge of one party and confidence reposed by the other.'"  <u>Alliance Bank v. Dykes</u>, A12-0455, 2012 WL 6734457, at *8 (Minn. Ct. App. Dec. 31, 2012) (quoting <u>Vacinek v. First Nat'l Bank of Pine City</u>, 416 N.W.2d 795, 799 (Minn. Ct. App. 1987)).

Kieffer asserts that Dedrick had a fiduciary duty to him.  <u>See</u> Am. Compl. ¶ 35.  Dedrick argues that Kieffer alleges no facts showing he reposed confidence in Dedrick or that Dedrick possessed some superiority of knowledge.  Furthermore, Dedrick contends that "the couple litigated a dissolution prior to the events outlined in the complaint."  Def. Dedrick's Mem. Supp. Mot. Dismiss at 6.

Kieffer has sufficiently stated a plausible fiduciary duty claim against Dedrick.  Kieffer alleges that Dedrick used her authority to improperly disburse his portion of the proceeds from the sale of real property.  <u>See</u> Am. Compl. ¶ 35.  Minnesota common law acknowledges that the relationship between a married couple is fiduciary in nature.  <u>See</u> <u>Knox</u>, 25 N.W.2d at 229 n.2 ("[T]he relation between husband and wife, strictly speaking, is not fiduciary by virtue of the relation alone, nevertheless it is so highly confidential and justifiable subject to such great reliance that taking advantage of it produces in effect the same consequences as though it were truly fiduciary.").  The Amended Complaint suggests the dissolution of Dedrick and Kieffer's marriage occurred "in or about November, 2012."  Am. Compl. ¶ 17.  Yet, the breach of

fiduciary duty claim references events occurring on dates "presently unknown to [Kieffer] in 2012" and "[b]etween September, 2012 and June, 2013." Id. ¶¶ 26, 27, 33. Given the uncertain timing of the facts pled related to the fiduciary duty claim and that spousal relationships may be recognized as fiduciary under Minnesota law, Dedrick's motion to dismiss the breach of fiduciary duty claim is denied at this time.

**5.  Fraud and Intentional Misrepresentation/Fraudulent Concealment**

In Counts 5 and 6, Kieffer brings claims for both fraud and "misrepresentation/fraudulent concealment." For the fraud claim, Kieffer alleges the Tundra Defendants made false representations to him related to the cancellation of the contract for deed and conversion of his property. He further broadly alleges that other Defendants (including Dedrick, Ginsburg, Page, Sathers and Dataquick) "made false representations resulting in damages to Mr. Kieffer." Am. Compl. at 17.

The Intentional Misrepresentation/Fraudulent concealment claim is pled generally against the "Defendants." See Am. Compl. ¶¶ 45–53. Specifically, Kieffer asserts that Defendants "engaged in the fraudulent concealment of material facts and intentionally misrepresented such with respect to his interest in real property subject to the Contract for Deed." Id. ¶ 46. Kieffer argues that "but for the Defendants' intentional misrepresentation and fraudulent concealment" the beach of contract, conversion, constructive trust, and fraud claims would not exist. Am. Compl. ¶¶ 47, 49, 51, 53.

To the extent Kieffer's fraud and intentional misrepresentation/fraudulent concealment claims relate to the Tundra Defendants and the Contract for Deed, the claim fails for the same reasons articulated earlier in this Order. That is, because the Contract for Deed was statutorily

cancelled, Kieffer is now precluded form securing any recovery under that contract.  See

Nowicki v. Benson Props., 402 N.W.2d 205, 208 (Minn. Ct. App. 1987) (finding that because a

fraudulent misrepresentation claim depended on the existence of a contract and that contract was

statutorily cancelled, the fraudulent misrepresentation claim failed).  Because Kieffer's fraud and

intentional misrepresentation/fraudulent concealment claims against the Tundra Defendants are

based on allegedly false statements and misrepresentations dependent upon the Contract for

Deed, the claim is dismissed.

   Additionally, and as to the other Defendants, the fraud and intentional

misrepresentation/fraudulent concealment claims fail to meet the heightened pleading standards

required when a party pleads fraud.  Rule 9 of the Federal Rule of Civil Procedure mandates that

"[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Courts have interpreted this rule as

requiring "plaintiffs to plead the who, what, when, where, and how:  the first paragraph of any

newspaper story."  Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011) (quotation

omitted).  Specifically, to satisfy the heightened pleading standard for fraud a plaintiff must

plead "such matters as the time, place and contents of false representations, as well as the

identity of the person making the misrepresentation and what was obtained or given up thereby."

Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2013) (quoting Abels v.

Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001)).

   For his fraud cause of action, Kieffer alleges that the Tundra Defendants, Dedrick, and

Ginsburg "made false and/or fraudulent representations to Mr. Kieffer, his agent, government

officials whose identities are presently unknown, and to others regarding material facts known to

21

be false and/or fraudulent, specifically as to ownership and interest in the personal and business

property described in paragraphs 12 & 17 above." Am. Compl. ¶ 41. These allegations are

insufficient. Although the heightened pleading standard operates in harmony with Rule 8 to

provide notice of a fraud claim, the nature of a fraud claim "necessitates a higher degree of

notice." Abels, 259 F.3d at 920.   Here, the Court and Defendants can only speculate on factual

circumstances constituting the alleged fraud, such as the contents of the alleged false

representations and to whom they were directed.

This is also true for Kieffer's intentional misrepresentation/fraudulent concealment claim.

In this count, Kieffer simply alleges that but for Defendants' intentional misrepresentation and

fraudulent concealment, the breach of contract, conversion, constructive trust, and fraud causes

of action would not exist. Again, the pleadings fail to identify the contents of any alleged

misrepresentations, who made such statements, or when they occurred. The fraud and

intentional misrepresentation/fraudulent concealment claims therefore fail to meet the Rule 9(b)

heightened pleading standards. Kieffer's fraud and intentional misrepresentation/fraudulent

concealment claims against Defendants other than the Tundra Defendants are dismissed for

failure to satisfy the heightened pleading standards of Rule 9(b). See Zimmerschied v. JP

Morgan Chase Bank, N.A., 49 F. Supp. 3d 583, 597 (D. Minn. 2014) (dismissing fraud claims

without prejudice for Rule 9(b) deficiencies).

### 6. Declaratory Relief

Finally, Kieffer seeks declaratory relief. Pursuant to the Minnesota Declaratory

Judgments Act, courts retain the power "to declare rights, status, and other legal relations

whether or not further relief is or could be claimed." Minn. Stat. § 555.01. Here, Kieffer

essentially asks this Court for discovery related to his asserted claims.  See Am. Compl. ¶¶

54–58.  A declaratory relief claim is not the proper avenue for seeking such discovery and the

claim is therefore dismissed.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.) Tundra Storage LLC, Tim Jorgenson, Tim Jorgenson Enterprises, Darryl Jorgenson, and

Darryl Jorgenson Realty, LLC's Motion to Dismiss [Docket No. 42] is **GRANTED** as

follows:

a.) Count 1 for breach of contract is dismissed with prejudice;

b.) Count 2 for conversion is dismissed with prejudice;

c.) Count 3 for constructive trust is dismissed with prejudice;

d.) Count 5 for fraud is dismissed with prejudice;

e.) Count 6 for misrepresentation/fraudulent concealment is dismissed with

prejudice; and

f.) Count 7 for declaratory judgment is dismissed.

2.) Richard Hocking's Motion to Dismiss [Docket No. 50] is **GRANTED** as follows:

a.) Count 1 for breach of contract is dismissed with prejudice;

b.) Count 2 for conversion is dismissed with prejudice;

c.) Count 3 for constructive trust is dismissed with prejudice;

d.) Count 5 for fraud is dismissed with prejudice;

e.) Count 6 for misrepresentation/fraudulent concealment is dismissed with

prejudice; and

f.)      Count 7 for declaratory judgment is dismissed.

3.)      Susan Ginsburg's Motion to Dismiss [Docket No. 60] is **GRANTED** as follows:

a.)      Count 5 for fraud is dismissed without prejudice;

b.)      Count 6 for misrepresentation/fraudulent concealment is dismissed without

prejudice; and

c.)      Count 7 for declaratory judgment is dismissed.

4.)      J.S. Realty, LLC and Julie Sathers' Motion to Dismiss [Docket No. 67] is **GRANTED** as

follows:

a.)      Count 5 for fraud is dismissed without prejudice;

b.)      Count 6 for misrepresentation/fraudulent concealment is dismissed without

prejudice; and

c.)      Count 7 for declaratory judgment is dismissed.

5.)      Dataquick Title, LLC and Teresa Warren's Motion to Dismiss [Docket No. 79] is

**GRANTED** as follows:

a.)      Count 5 for fraud is dismissed without prejudice;

b.)      Count 6 for misrepresentation/fraudulent concealment is dismissed without

prejudice; and

c.)      Count 7 for declaratory judgment is dismissed.

6.)      Leanne Dedrick's Motion to Dismiss [Docket No. 96] is **GRANTED in part** and

**DENIED in part** as follows:

a.)      Count 2 for conversion is denied;

      b.)      Count 3 for constructive trust is denied;

      c.)      Count 4 for breach of fiduciary duty is denied;

      d.)      Count 5 for fraud is dismissed without prejudice;

      e.)      Count 6 for misrepresentation/fraudulent concealment is dismissed without prejudice; and

      f.)      Count 7 for declaratory judgment is dismissed.

5.)      EDSA Storage, LLC's Motion to Dismiss [Docket No. 111] is **GRANTED** as follows:

      a.)      Count 2 for conversion is dismissed without prejudice;

      b.)      Count 3 for constructive trust is dismissed without prejudice;

      c.)      Count 5 for fraud is dismissed without prejudice;

      d.)      Count 6 for misrepresentation/fraudulent concealment is dismissed without prejudice; and

      e.)      Count 7 for declaratory judgment is dismissed.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 15, 2016.