UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Howard O. Kieffer,

                    Plaintiff,                  Court File No. 14-cv-3192 (WMW/LIB)

    v.

                                              **REPORT AND RECOMMENDATION**

Tundra Storage LLC, et al.

                    Defendants.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 208], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motions for Summary Judgment, [Docket Nos. 181, 188, 193, 200]. Briefing was completed and the motions taken under advisement on January 13, 2017.

For the reasons set forth below, the Court recommends that Defendant Ginsburg's Motion for Summary Judgment, [Docket No. 181], be **GRANTED**, Defendant Dedrick's Motion for Summary Judgment, [Docket No. 188], be **GRANTED**, Defendants J.S. Realty, Inc. and Sathers' Motion for Summary Judgment, [Docket No. 193], be **GRANTED**, and Defendants RELS Title and Warren's Motion for Summary Judgment, [Docket No. 200], be **GRANTED**.

## I.    BACKGROUND

In May 2009, while Plaintiff, Howard O. Kieffer, and Defendant, Leanne Dedrick, were married, they entered into a Contract for Deed with Tundra Storage, LLC ("Tundra Storage") for a storage unit in the Tundra Storage Condominiums in Hermantown, Minnesota ("the Tundra Storage Unit"). (Amend. Compl., [Docket No. 17], 3; Ginsburg Answer, [Docket No. 31], 1-2, 37; Anthony Aff., Exh. A, [Docket No. 44-1], 2-9). Plaintiff and Dedrick also owned real

property at 1919 Garden Street in Duluth, Minnesota, legally described as "Lot 17, Block 4 KENT ROAD DIVISION OF DULUTH" (the "Garden Street property"). (Sund Dec., Exh. 1, [Docket No. 146], 9).

On September 14, 2009, Plaintiff began serving a federal prison sentence. (Amend. Compl., [Docket No. 17], 1; Stutzman Aff., [Docket No. 191-1], 1-2). Dedrick subsequently rented a storage unit at E-Z Storage in Hermantown ("the E-Z Storage Unit"), in which she stored some of Plaintiff's personal property. (Id. at Exh. 2, [Docket No. 191-1], 18; Id. at Exh. 3, [Docket No. 191-1], 24).

Plaintiff's claims in the present case stem from the dispersion or sale of some of Plaintiff's personal and real property after his incarceration.

In August 2010, Dedrick initiated divorce proceedings against Plaintiff; Dedrick was represented in those proceedings by Defendant, Susan Ginsburg. (Ginsburg Aff., [Docket No. 185], 1; Stutzman Aff., [Docket No. 191-1], 2).

In May 2011, Tundra Storage initiated the statutory requirements to cancel the Contract for Deed pursuant to Minn. Stat. § 559.21. (Anthony Aff., Exh. C, [Docket No. 44-1], 14-17). Richard Hocking, Tundra Storage's attorney, mailed a Notice of Cancellation of Contract for Deed and a Notice and Acknowledgment of Service to Dedrick, and Plaintiff was served in New Jersey, where he was incarcerated at the time. (Id. at 16-18, 20).

On June 21, 2011, Tundra Storage filed an eviction action complaint in Minnesota state district court against Plaintiff and Dedrick. (Anthony Aff., Exh. D, [Docket No. 44-1], 23). The state district court issued an eviction summons, after which Dedrick executed a waiver and release regarding the items stored in the Tundra Storage unit. (Id. at 24; Id. at Exh. E, [Docket No. 44-1], 26). In a letter dated June 27, 2011, Hocking sent Plaintiff a copy of the eviction

summons and complaint and instructed that Tundra Storage would store Plaintiff's personal property for 28 days after any order of eviction; it would then sell or otherwise dispose of the property and apply any money from the sale to recover costs and expenses of the eviction proceedings. (Second Anthony Aff., Exh. E, [Docket No. 149-1], 16-19). After further proceedings in Minnesota state court, Hocking informed Plaintiff that Tundra Storage would "dispose of the personal property that remains in Unit 20 on August 16, 2011 . . . by sale or other means." (Anthony Aff., Exh. H, [Docket No. 44-1], 35).

The Minnesota state district court entered a decree of divorce on November 22, 2011, and bifurcated the proceedings, reserving all other issues for later decision. (Stutzman Aff., Exh. 1, [Docket No. 191-1], 3-4). On April 3, 2012, the Minnesota state district court presiding over the divorce proceedings made the following additional findings of fact and conclusions of law, as relevant to the present case:

1.  The parties [Plaintiff and Dedrick] owned the Garden Street property and "[t]here may be tax liens or other restitution liens against said property." (Ginsburg Aff., Exh. 1, [Docket No. 185-1], 7). Dedrick was to list the property and sign any documents required to sell the property to a third party. (Id.). When the house sold, Dedrick was to provide Plaintiff with a copy of the closing statement. (Id.). Dedrick would "receive one-half of the net proceeds after the payment of any property taxes due and owing on the property, realtor's commission and the usual and customary costs associated with the sale of a house." (Id.). "The other half of the net proceeds shall be used to pay any tax liens or restitution liens/judgments incurred by" Plaintiff. (Id.). Any leftover proceeds were to be placed into an escrow account and, upon motion by

either party, the Minnesota state district court would determine division of such proceeds. (Id.).

2.  Plaintiff and Dedrick also owned interest in the Tundra Storage Unit, but the Minnesota state district court held that it "was being purchased on a Contract for Deed which has since been cancelled. It does not appear that the property has any value." (Ginsburg Aff., Exh. 1, [Docket No. 185-1], 7, 15). "Any remaining personal property [in the unit] shall be awarded to [Plaintiff]. [Dedrick] shall not be responsible for any personal property still there and shall be held harmless from any sale or damage to said personal property." (Id.).

3.  "Any personal property located in the [E-Z Storage Unit] is awarded to [Plaintiff]. He shall be responsible for the cost of said storage unit commencing January 1, 2012, and [Dedrick] shall be held harmless thereon." (Id.).

In April 2012, Dedrick engaged Defendant, J.S. Realty, Inc. ("J.S. Realty"), to sell the Garden Street property; Defendant, Julie Sathers was the listing agent. (Dedrick Aff., Exh. 1, [Docket No. 192-1], 6; Sathers Aff., [Docket No. 196], 2). When Dedrick accepted an offer to sell the property, J.S. Realty engaged Defendant, RELS Title, Inc., to provide a title commitment and close the sale. (Id. at Exh. 2, [Docket 192-1], 12-17; Id.). Defendant, Teresa Warren handled the closing on behalf of RELS. (Warren Aff., [Docket No. 203], 2).

Because the language of the Minnesota state district court's April 2012, order indicated that there might be federal taxes due on the property, as well as, a lien for restitution stemming from Plaintiff's criminal conviction, Warren initiated communication with the United States Department of Justice ("DOJ") and obtained a notice of lien against Plaintiff's property as a result of the $152,750.00 restitution imposed in conjunction with his criminal sentence. (Id. at 4;

Id. at Exh. 4, [Docket No. 203], 35). The notice of lien explicitly stated that it "shall be considered a notice of lien for taxes for the purposes of any State or local law providing for the filing of notice of a tax lien." (Id. at 35). The DOJ agreed to prepare and execute a partial release on the Garden Street property provided that any and all proceeds owed to Plaintiff from the sale of the property would be forwarded to the Clerk of Court to be applied toward Plaintiff's outstanding restitution balance. (Id. at Exh. 6, [Docket No. 203], 37).

Warren and RELS also discovered a recorded notice of an Internal Revenue Service ("IRS") tax lien in the total amount of $32,672.30. (Warren Aff., [Docket No. 203], 5; Id. at Exh. 8, [Docket No. 203], 39). That tax lien had expired in 2009, and it was released upon request to the Examiner of Titles for a directive doing so. (Warren Aff., [Docket No. 203], 5; Id. at Exh. 9, [Docket No. 203], 41-42). Warren obtained additional information and notices of federal tax assessments from Dedrick and also obtained from the IRS a statement that the amount needed to release the federal tax liens against Plaintiff and Dedrick related to years 2002 through 2006 was $53,890.40 as of June 19, 2012. (Warren Aff., [Docket No. 203], 5; Id. at Exhs. 11-12, [Docket No. 203], 44-56, 53). Finally, Warren discovered that there were delinquent real property taxes in the amount of $2,207.49 for 2011 and the first half of 2012. (Warren Aff., [Docket No. 203], 6; Id. at Exh. 14, [Docket No. 203], 58).

Dedrick sold the Garden Street property on or about June 15, 2012. (Warren Aff., [Docket No. 203], 2). As a result of Warren's calculations regarding required disbursements to reconcile tax liens and Plaintiff's required criminal restitution, Plaintiff personally received no disbursement from the proceeds of the sale. (Id. at 7). After closing, Warren provided to Plaintiff a copy of the Settlement Statement. (Id. at 8; Id. at Exh. 21, [Docket No. 203], 85-88).

Meanwhile, in March 2012, E-Z Storage sent Dedrick a notice of default due to an unpaid balance of $99, which was the rental fee for January 6, 2012, through March 6, 2012. (Dedrick Aff., Exh. 4, [Docket No. 192-1], 18). Dedrick replied by letter, informing E-Z strage that the storage unit contained Plaintiff's personal items for which, pursuant to the Minnesota state court's order, Dedrick was no longer responsible. (Id. at Exh. 5, [Docket No. 192-1], 20). Dedrick further informed E-Z Storage that she had no wish to bring the account current or remove its contents, and she provided Plaintiff's contact information. (Id.).

On August 31, 2012, Ken Page at E-Z Storage sent Dedrick another letter, stating that since Dedrick was the only name on the contract for the storage unit, Dedrick was the only person E-Z Storage could work with regarding the unit and terms of the contract. (Id. at Exh. 6, [Docket No. 192-1], 21).

On November 15, 2012, E-Z Storage sent Dedrick a second notice of default, calculating the outstanding fees at $346.50. (Id. at Exh. 4, [Docket No. 192-1], 19). E-Z Storage, through Page, also sent Dedrick a Notice of Lien Sale dated November 15, 2012, informing her that if the outstanding balance was not paid in full within 15 days, the stored property would be advertised for sale and sold. (Id. at Exh. 7, [Docket No. 192-1], 22).

In December 2012, in response to a motion by Plaintiff to find Dedrick in contempt of court for non-compliance with the Minnesota state district court's April 2012, order in the divorce proceedings, the Minnesota state district court issued another order. (Ginsburg Aff., Exh. 3, [Docket No. 185-1], 31, 35). During the hearing on Plaintiff's motion for a finding of contempt, it appears that Plaintiff "complained that tax liens and/or restitution liens/judgments were paid out of the proceeds from the sale of the house." (Id. at 33). The Minnesota state district court ruled that because its prior order had directed such payment, Dedrick and RELS Title

Company had complied with the court's order. (Id.). The Minnesota state district court also noted:

13. [The prior order] awarded any and all personal property located at E[-]Z Storage to [Plaintiff]. He was made responsible for any storage costs commencing January 1, 2012. [Plaintiff] argues he does not have access to the storage unit.

14. [Dedrick] provided E[-]Z storage with relevant information from the Judgment and Decree along with an address for [Plaintiff] in her letter of March 12, 2012. [Dedrick] has no further obligation under the terms of [the prior order] at this point. She has complied with it. [Dedrick] will need to cancel her personal contract with E[-]Z Storage if she has not already done so.

15. [The prior order] awarded [Plaintiff] any and all personal property remaining at the Tundra Storage facility. The Contract for Deed for the property, according to [Plaintiff], was cancelled about eighteen months ago. [Plaintiff] complains that the attorney for Tundra Storage will not contact him.

16. [Dedrick] has no obligation for the personal property, if any, remaining in the Tundra Storage facility. The personal property was awarded to [Plaintiff]."

(Id. at 33-34).

On August 18, 2014, Plaintiff filed his Complaint in this Court, bringing claims against Tundra Storage; Darryl Jorgenson, who had signed as the seller the Contract for Deed on the Tundra Storage Unit; Tim Jorgenson; Tim Jorgenson Ent.; Richard Hocking; RELS Title; Teresa Warren; J.S. Realty; Julie Sathers; E-Z Storage Co.; Ken Page; Leanne Dedrick; Susan Ginsburg; and John and/or Jane Does 1 to 10. (Compl., [Docket No. 1], 1-2; Anthony Aff., Exh. A, [Docket No. 44-1], 2-9). First, Plaintiff brought a claim of breach of contract against Defendant Tundra Storage. (Compl., [Docket No. 1], 3). Plaintiff's second cause of action is claims of conversion against Defendants Tundra Storage, Darryl Jorgenson, Tim Jorgenson, Tim Jorgenson Ent., and Hocking (collectively, "the Tundra Defendants"), and against Defendants E-Z Storage Co., Page, Dedrick, and Ginsburg. (Id. at 4-6). Plaintiff's third cause of action is a constructive trust claim against the Tundra Defendants and Defendants Page, Dedrick, and Ginsburg. (Id. at 7). His

fourth cause of action is a claim of breach of fiduciary duty against Defendants RELS Title, Dedrick, Sathers, and Ginsburg. (Id. at 7-9). Plaintiff's fifth cause of action alleges fraud by the Tundra Defendants and Defendants Page, Dedrick, and Ginsburg. (Id. at 9-11). Plaintiff's sixth cause of action is a claim of intentional misrepresentation and fraudulent concealment by all Defendants. (Id. at 11-13). Finally, Plaintiff's seventh cause of action seeks declaratory judgment in his favor against Defendants Tundra Storage, Page, Dedrick, Ginsburg, Sathers, and RELS Title. (Id. at 13-14). Plaintiff requests restoration of his property or an award of the value of the property, a constructive trust, money damages, and declaratory relief. (Id. at 15-17).

On February 5, 2015, Plaintiff filed an Amended Complaint. (Amend. Compl., [Docket No. 17]). The Amended Complaint added some factual allegations and noted that Plaintiff had been moved from a federal correctional institution in Pennsylvania to a federal correctional institution in Colorado, but otherwise, the claims at issue did not change substantively. (Compare Compl., [Docket No. 1], with Amend. Compl., [Docket No. 17], 1). The same day, Plaintiff filed a document titled "Doe Amendment," identifying one of the previously listed Doe Defendants as Darryl Jorgenson Realty, LLC. (Doe Amendment, [Docket No. 18]).

On April 13, 2015, Defendants J.S. Realty and Sathers filed a joint Answer. ([Docket No. 29]). The following day, Defendant Ginsburg filed her Answer. ([Docket No. 31]). On April 14 and 16, 2015, the Court granted extensions of time for Defendant Dedrick and Defendant RELS Title to file Answers or otherwise respond to the Amended Complaint. ([Docket Nos. 35, 39]). On April 17, EDSA Storage, LLC, ("EDSA") filed its Answer.[1] ([Docket No. 40]).

---

[1] Plaintiff attempted to serve E-Z Storage Co. by serving EDSA. (EDSA Answer, [Docket No. 40], 1). EDSA asserted in its Answer that service upon it did not qualify as proper service upon E-Z Storage Co. (Id.). EDSA further asserted that it was "not a proper party to this litigation on the basis that it had no dealings whatsoever with Plaintiff at any time." (Id. at 3). Nevertheless, EDSA filed an Answer and, later, a Motion to Dismiss. (See, EDSA Motion to Dismiss, [Docket No. 111]).

On April 21, 2015, the Tundra Defendants filed a joint Motion to Dismiss, asking the Court to dismiss Counts 1-3 and 5-7 of the Amended Complaint. (Tundra Defs.' Mtn to Dismiss, [Docket No. 42]). They argued that the claims were barred by res judicata and, in the alternative, the claims were insufficiently pled and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Tundra Defs.' Mem. in Supp., [Docket No. 46], 2). Between April 22 and June 15, 2015, the remaining Defendants filed Motions to Dismiss, joining the Motion filed by the Tundra Defendants to differing extents and raising additional Rule 12(b)(6) arguments. (Hocking Mtn to Dismiss, [Docket No. 50]; Hocking Mem. in Supp., [Docket No. 53]; Ginsburg Mtn to Dismiss, [Docket No. 60]; Ginsberg Mem. in Supp., [Docket No. 62]; J.S. Realty/Sathers Mtn to Dismiss, [Docket No. 67]; J.S. Realty/Sathers Mem. in Supp., [Docket No. 68]; RELS/Warren Mtn to Dismiss, [Docket No. 79]; RELS/Warren Mem. in Supp., [Docket No. 80]; Dedrick Mtn to Dismiss, [Docket No. 96]; Dedrick Mem. in Supp., [Docket No. 98]; EDSA Mtn to Dismiss, [Docket No. 111]; EDSA Mem. in Supp., [Docket No. 106]).

On May 6, 2015, Defendant RELS Title (now known as Dataquick Title LLC, but referred to herein for ease of understanding as RELS Title) and Defendant Warren filed Answers, generally denying the claims against them and raising various affirmative defenses. (RELS Answer, [Docket No. 76]; Warren Answer, [Docket No. 77]).

On June 22, 2015, this Court issued an Order instructing Plaintiff to provide within 20 days proof of service or good cause for an extension of time to serve Defendant Page or risk dismissal of Plaintiff's claims against Defendant Page. (Order, [Docket No. 122]). When Plaintiff did not comply with the Order despite several extensions of time for compliance, this Court issued a Report and Recommendation recommending dismissal without prejudice of

Plaintiff's claims against Defendant Page. (Rep. & Rec., [Docket No. 160]). On December 14, 2015, the District Court adopted the Report and Recommendation and dismissed Plaintiff's claims against Defendant Page. (Order, [Docket No. 161]).

Meanwhile, on October 5, 2015, Plaintiff filed a single responsive Memorandum in Opposition to the Motions to Dismiss. (Plf. Mem. in Opp., [Docket No. 140]). Defendants filed Replies, and the District Court took the Motions under advisement on the parties' written submissions. ([Docket Nos. 141, 142, 144, 145, 147, 148, 151).

On October 29, 2015, Plaintiff filed a second "Doe Amendment," purporting to further amend his Amended Complaint to identify EDSA as a previously named Doe Defendant and allege that EDSA is a successor in interest to named Defendants E-Z Storage Co. and Page. (Order, [Docket No. 158], 2). Noting that the Doe Amendment did not comply with the Federal Rules of Civil Procedure applicable to amending a complaint or with Local Rules on motions, this Court ordered the Doe Amendment be stricken without prejudice as having been filed in error. (Id. at 2-4).

 On January 15, 2016, the District Court issued a Memorandum Opinion and Order granting in part and denying in part Defendant Dedrick's Motion to Dismiss and granting the remaining Motions to Dismiss. (Mem. Op. & Order, [Docket No. 162], 8-25). The claims that survived are as follows:  (1) Plaintiff's conversion claims against Defendants Dedrick and Ginsberg related to property stored in the E-Z Storage unit and which Plaintiff alleged Defendants Dedrick and Ginsburg later relocated, sold, or otherwise disposed of; (2) Plaintiff's constructive trust claims against Defendant Dedrick and Defendant Ginsburg based on the alleged conversion of Plaintiff's property; and (3) Plaintiff's breach of fiduciary duty claims against Defendants RELS Title, Warren, J.S. Realty, Sathers, Dedrick, and Ginsburg. (Id.).

Accordingly, Defendant Dedrick filed her Answer on January 29, 2016, generally denying the remaining claims against her and raising various affirmative defenses. (Dedrick Answer, [Docket No. 163], 1-11).

The case proceeded to discovery, and on July 22, 2016, Plaintiff was deposed. (Stutzman Aff., Exh. 3, [Docket No. 191-1], 21).

On October 28, 2016, Defendant Ginsburg filed her Motion for Summary Judgment. ([Docket No. 181]). On October 31, 2016, Defendant Dedrick filed her Motion for Summary Judgment, and Defendants Sathers and J.S. Realty filed their joint Motion for Summary Judgment. (Dedrick Mtn for SJ, [Docket No. 188]; Sathers/J.S. Realty Mtn for SJ, [Docket No. 193]. On November 1, 2016, Defendants RELS Title and Warren filed their joint Motion for Summary Judgment. ([Docket No. 200]). Each of the Defendants filed Memoranda in Support of their Motions, and some of the Defendants filed Affidavits as well. ([Docket Nos. 182, 185-86, 190-92, 195-97, 202-04]).

On December 6, 2016, pursuant to Title 28, United States Code, Section 636, the Honorable Wilhelmina M. Wright referred to the undersigned all dispositive and nondispositive motions. (Order, [Docket No. 208]). Judge Wright also cancelled the hearing scheduled for January 6, 2017, at which oral arguments on the pending motions were to be heard. ([Docket No. 209]).

Plaintiff subsequently filed a letter with this Court, which the undersigned construed as a motion for an extension of time in which to respond to Defendants' Motions for Summary Judgment. ([Letter, [Docket No. 207]; Order, [Docket No. 210]). The Court granted the extension and, on January 2, 2017, Plaintiff filed Memoranda in Opposition to the pending Motions for Summary Judgment. (Order, [Docket No. 210]; Mem. in Opp., [Docket Nos. 212,

213, 214]). On January 13, 2017, Defendants filed Replies to Plaintiff's Memoranda in Opposition. ([Docket Nos. 215, 216, 218, 220). This Court took the motions under advisement on the parties' written submissions on January 13, 2017. (Order, [Docket No. 210]).

## II.   STANDARDS OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see, also, Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

The moving party bears the burden of offering sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When deciding a motion for summary judgment, a court views the evidence before it in the light most favorable to the nonmoving party and all reasonable inferences that may be drawn from the underlying facts in the record must be drawn in the favor of the nonmoving party. Ludwig v. Anderson, 54 FG.3d 465, 470 (8th Cir. 1995); Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

Although the moving party bears the burden of showing the absence of any genuine issue of material fact, the nonmoving party may not rest on mere allegations or denials in his or her

pleadings; the nonmoving party must set forth specific facts, based on admissible evidence, showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). In addition, a movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Under such circumstances, no genuine issue of fact exists because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

"[P]ro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). The claims of a pro se plaintiff cannot survive a motion for summary judgment unless the plaintiff has set forth specific admissible facts demonstrating the existence of a genuine issue for trial. See, Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

## III.    DEFENDANT GINSBURG'S MOTION FOR SUMMARY JUDGMENT, [Docket No. 181]

As explained above, the claims remaining against Defendant Ginsburg are (1) the conversion claim related to property stored in the E-Z Storage unit and which Plaintiff merely alleged Defendants Dedrick and Ginsburg later relocated, sold, or otherwise disposed of; (2) the constructive trust claim regarding the allegedly converted property; and (3) Plaintiff's breach of fiduciary duty claim against Ginsburg. (See, Mem. Op. & Order, [Docket No. 162], 15 n.8, 18). Defendant Ginsburg seeks summary judgment in her favor on all three claims, contending that

(1) Plaintiff cannot produce sufficient evidence to show the required elements of conversion or constructive trust, (2) Defendant Ginsburg owed Plaintiff no fiduciary duty, and (3) Defendant Ginsburg complied with court orders in disposing of both real and personal property. (Mem. in Supp., [Docket No. 182], 2).

a. **Conversion**

"Under Minnesota law, conversion is defined as 'an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property.'" Reisdorf v. i3, LLC, 129 F. Supp. 3d 751, 779 (D. Minn. 2015).

Plaintiff alleges in his Complaint that Defendant Ginsburg, along with Defendant Dedrick, contracted with Defendant E-Z Storage to store some of Plaintiff's property at the E-Z Storage unit. (Amend. Compl., [Docket No. 17], 5-6). Plaintiff asserts that this property included various personal items such as clothing, office equipment, and furniture, and had an estimated value of over $75,000. (Id. at 6). Plaintiff further alleges that Defendant Ginsburg (along with Defendant Dedrick) later breached the contract with Defendant E-Z Storage and ceased paying for the storage. (Id.). Plaintiff contends that Defendant Dedrick, Defendant Ginsburg, or Ken Page of E-Z Storage then "sold, relocated, or otherwise disposed of, or converted [Plaintiff's] personal and business property, described above, to their own use and/or benefit." (Id. at 7).

Defendant Ginsburg avers that she did not cause any of Defendant Dedrick's or Plaintiff's personal property to be stored at E-Z Storage. (Mem. in Supp., [Docket No. 182], 13). In an Affidavit Submitted to this Court, Defendant Ginsburg states that she was not a party to a contract with E-Z Storage in relation to any of Plaintiff's or Defendant Dedrick's personal property. ([Docket No. 185], 2). Defendant Ginsburg further avers that she did not "hold,

possess, control, transfer or sell the personal property of Dedrick and/or [Plaintiff] that was located in the parties' E[-]Z Storage unit," nor did she "give any instructions to E[-]Z Storage, or any of its principals or employees, regarding personal property of Dedrick and/or [Plaintiff] located there." (Id.).

In his Memorandum in Opposition to Defendant Ginsburg's Motion for Summary Judgment, Plaintiff does not set forth any specific facts, based upon admissible evidence, that controvert the statements in Defendant Ginsburg's Affidavit. ([Docket No. 212], 1-5). Plaintiff provides no admissible evidence that Defendant Ginsburg ever entered into a contract with E-Z Storage, that Defendant Ginsburg ever possessed or controlled any of the items within the E-Z Storage unit, or that Defendant Ginsburg in any way willfully and unjustifiably interfered with Plaintiff's personal property in a way that was inconsistent with Plaintiff's rights. See, Reisdorf, 129 F. Supp. 3d at 229 (defining conversion). Instead, Plaintiff merely asserts that Defendant Ginsburg's legal representation of Defendant Dedrick "evidences her inextricable intertwinement in the conduct alleged." (Mem. in Opp., [Docket No. 212], 3).

As set forth above, in challenging a motion for summary judgment, a nonmoving party may not rest on mere allegations in his pleadings; the nonmoving party must set forth specific facts, based on admissible evidence, showing the existence of a genuine issue. See, Forrest, 285 F.3d at 291. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas, 438 F.3d at 526-27.

Even viewing the evidence before the Court in the light most favorable to Plaintiff and drawing in Plaintiff's favor all reasonable inference from the underlying facts in the record, the Court nevertheless finds that Defendant Ginsburg has met her burden to offer sufficient

15

admissible evidence to show that she is entitled to judgment as a matter of law on Plaintiff's conversion claim against her. The record now before the Court contains no admissible evidence to show that Defendant Ginsburg participated in any way with the contract for storage of property at E-Z Storage or the eventual disposition by E-Z Storage of any of the property stored there. Plaintiff's mere allegations and conclusory statements alone are not sufficient to defeat a motion for summary judgment.

Accordingly, this Court recommends **granting** Defendant Ginsburg's Motion for Summary Judgment, [Docket No. 181], to the extent that it requests summary judgment on Plaintiff's claim against her for conversion.

### b.  Constructive Trust

"Under Minnesota law, a constructive trust arises in favor of the person equitably entitled to property whenever legal title is obtained through fraud, oppression, duress, undue influence, force, crime, or taking improper advantage of a confidential or fiduciary relationship." Hanson v. F.D.I.C., 13 F.3d 1247, 1253 (8th Cir. 1994). A constructive trust is an equitable remedy imposed "to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose." Wright, 311 N.W.2d at 485. A court may impose a constructive trust where there is "clear and convincing evidence that it would be morally wrong for the property holder to retain" the property at issue. Spiess v. Schumm, 448 N.W.2d 106, 108 (Minn. Ct. App. 1989).

In his claim of constructive trust, Plaintiff alleges that Defendant Ginsburg held the proceeds from the conversion of his property which had been kept in the E-Z Storage unit, or the market value of such, in a constructive trust for him or for his benefit. (Amend. Compl., [Docket No. 17], 7-8). In support of her Motion for Summary Judgment, Defendant Ginsburg again avers

that she never committed conversion of the property in the E-Z Storage unit and never had possession, control, or an ownership interest in it. ([Docket No. 182], 14-15). In his Memorandum in Opposition, Plaintiff bases his request for the imposition of a constructive trust regarding Defendant Ginsburg solely on his conclusion that Defendant Ginsburg's role as Defendant Dedrick's attorney "evidences her inextricable intertwinement in the conduct alleged." ([Docket No. 212], 3). He offers no additional admissible evidence to support this mere conclusion.

The Court again finds that Defendant Ginsburg is entitled to judgment as a matter of law regarding Plaintiff's request for a constructive trust. The record contains no admissible evidence (and Plaintiff has offered no facts based on admissible evidence) to show that Defendant Ginsburg ever obtained legal title to the property stored in the E-Z Storage unit or benefitted from its sale, as would justify the imposition of a constructive trust. Instead, Plaintiff has offered only mere allegations and conclusions, which, again, are not sufficient alone to defeat a motion for summary judgment.

Accordingly, this Court recommends **granting** Defendant Ginsburg's Motion for Summary Judgment, [Docket No. 181], to the extent that it requests summary judgment in Defendant Ginsburg's favor on Plaintiff's request for a constructive trust.

### c.  Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary duty, breach, causation, and damages." (Mem. Op. & Order, [Docket No. 162], 18-19) (citing Padco, Inc. v. Kinney & Lange, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989); Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982)).

17

Without explaining the source of Defendant Ginsburg's fiduciary duty to Plaintiff, Plaintiff simply alleged in his Amended Complaint that Defendant Ginsburg

> owed a fiduciary duty to [Plaintiff] and breached such duty insofar as providing RELS with their authority to disburse what would have otherwise been [Plaintiff's] proceeds from the sale of [the Garden Street property], or providing him with the documentation that would evidence that his proceeds were disbursed properly to satisfy perfected liens and/or judgments that were his sole liability.

(Amend. Compl., [Docket No. 17], 9-10). Plaintiff further simply alleged that Defendant Ginsburg instructed or influenced RELS Title not to provide Plaintiff with documentation justifying the disbursements made from the proceeds of the sale of realty, such that Defendant Ginsburg, among others, received the benefit of $86,500 in proceeds from the sale which were more properly due to Plaintiff. (Id. at 9).

In support of her Motion for Summary Judgment, Defendant Ginsburg once more avers that she did not owe Plaintiff a fiduciary duty because her only role in the events leading up to this case was as Defendant Dedrick's attorney in contested marital dissolution proceedings in which Plaintiff was the respondent. ([Docket No. 182], 7). Further, Defendant Ginsburg has filed with this Court an Affidavit in which she states that she "did not instruct, advise or influence defendant RELS Title or any other individual or entity not to provide documentation pertaining to the sale of Dedrick and [Plaintiff's] homestead. Rather, [she] informed Dedrick that RELS Title should consult its own counsel in order to determine what documentation to provide Kieffer." (Ginsburg Aff., [Docket No. 185], 2). Defendant Ginsburg's position is further supported by email correspondence in which Defendant Dedrick informs Defendant Warren that Defendant Ginsburg will not advise Defendant RELS Title on how Defendant RELS Title should respond to Plaintiff's request for information, and that "[w]hether Rels [*sic*] has certain legal

obligations to respond to information requests is something for your legal team to decide." (Dedrick Aff., Exh. 2, [Docket No. 192-1], 15-16).

Defendant Ginsburg has also filed with this Court Plaintiff's Objections and Responses to Defendant Ginsburg's First Requests for Admissions and Interrogatories. (Witty Aff., Exh. 1, [Docket No. 186-1], 1-11). Therein, Plaintiff admits that he and Defendant Dedrick were adverse parties in the marriage dissolution proceedings in which Defendant Ginsburg represented Defendant Dedrick. (Id. at 1). Plaintiff also admits that he has never retained Defendant Ginsburg to act as his attorney. (Id. at 2).

In response, Plaintiff simply asserts in his Memorandum that his "breach of fiduciary duty claim centers on the sale of real property located in Duluth, Minnesota in which he claims an interest." (Mem. in Opp., [Docket No. 212], 2). Plaintiff asserts that Defendant Ginsburg represented Defendant Dedrick "in the sale of the marital home and disposition of [Plaintiff's] personal property," and merely alleges generally that Defendant Ginsburg "breached fiduciary duties owed to him by [her] involvement with the sale of the real property and disbursement of proceeds from that sale." (Id. at 1-2). Plaintiff has not provided to this Court any affidavits, declarations, or other admissible evidence that would support his allegation that a fiduciary relationship had ever been created so as to exist between Plaintiff and Defendant Ginsburg.

A "party requesting summary judgment is entitled to judgment as a matter of law if the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Vaughn v. Wallace, 496 F.3d 908, 910-11 (8th Cir. 2007). Although the existence of a fiduciary relationship is normally a question of fact, "[t]he court is not precluded . . . from resolving the issue on summary judgment if the undisputed facts establish that no fiduciary duty exists." H. Enters.

Int'l, Inc. v. Gen. Elec. Capital Corp., 833 F. Supp. 1405, 1421 (D. Minn. 1993). This Court "looks to state law to determine if a fiduciary relationship exists." H Enters. Int'l, Inc. v. Gen. Elec. Capital Corp., 833 F. Supp. 1405, 1421 (D. Minn. 1993) (citing Davis v. Merrill Lynch, Pierce, Fenner & Smith, 906 F.2d 1206, 1215 (8th Cir. 1990)).

> "A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." In other words, "[a] fiduciary relationship has two characteristics: 'superiority of knowledge of one party and confidence reposed by the other.'"

(Memorandum Opinion and Order, [Docket No. 162], 18-19) (citations omitted).

"Minnesota generally recognizes two categories of fiduciary relationships: 'relationships of a fiduciary nature per se, and relationships in which circumstances establish a de facto fiduciary obligation.'" Ransom v. VFS, Inc., 918 F. Supp. 2d 888, 897 (D. Minn. 2013). Minnesota Courts have recognized only a limited number of relationships as constituting per se fiduciary relationship: trustee-beneficiary, attorney-client, business partnerships, director-corporation, officer-corporation, and husband-wife. See, Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 765 N.W.2d 907, 914 (Minn. Ct. App. 2008) (identifying cases).

> Whether a de facto fiduciary relationship exists is a question of fact, and evidence of financial control, assurances and invited consequences, and disparities in business experience may be sufficient to show the existence of such a fiduciary relationship. . . . [However,] a fiduciary relationship is not established "by [one party] having faith and confidence in [another party] where [the first party] should have known the [second party] was representing an adverse interest."

Ransom, 918 F. Supp. 2d at 897. But "[a]s a general matter, Minnesota courts are 'extremely reluctant to impose a duty upon attorneys to their client's adversary' because such a duty would 'necessarily conflict' with the attorney's duty to the client." Thomas B. Olson & Assocs., P.A., 756 N.W.2d at 916 (citations omitted).

Viewing the evidence in the light most favorable to Plaintiff, this Court concludes that, as a matter of law, no fiduciary relationship existed between Plaintiff and Defendant Ginsburg. Defendant Ginsburg represented Defendant Dedrick as her attorney in legal proceedings intended to dissolve the marital relationship between Defendant Dedrick and Plaintiff. In that context, Defendant Ginsburg represented an interest adverse to Plaintiff's. Plaintiff has not offered any admissible evidence to support making an exception to the general rule that attorneys do not have fiduciary relationships with their clients' adversaries. In addition, Plaintiff has not provided any admissible evidence to show that Defendant Ginsburg was personally involved in the sale of the Garden Street Property such that Plaintiff could even argue a fiduciary relationship with Defendant Ginsburg was established in the context of those proceedings. The admissible evidence currently before this Court shows instead that Defendant Ginsburg's only role in the sale of the Garden Street Property was to protect Defendant Dedrick's interests so that the sale complied with the requirements set forth in the Minnesota state district court's order entered in the underlying divorce proceedings.

Put simply, Plaintiff has failed to provide any admissible evidence that he and Defendant Ginsburg had any fiduciary relationship, an element essential to Plaintiff's claim against Defendant Ginsburg for breach of fiduciary duty. Plaintiff's "mere allegations [of a fiduciary relationship], unsupported by specific facts or evidence beyond [Plaintiff's] own conclusions, are insufficient to withstand a motion for summary judgment." See, Thomas, 483 F.3d at 526-27.

Therefore, this Court recommends **granting** Defendant Ginsburg's Motion for Summary Judgment, [Docket No. 181], with regards to Plaintiff's claim against Defendant Ginsburg for breach of fiduciary duty.

IV.   **DEFENDANT DEDRICK'S MOTION FOR SUMMARY JUDGMENT, [Docket No. 188]**

The claims remaining against Defendant Dedrick are:  (1) Plaintiff's conversion claim related to property stored in the E-Z Storage unit, which Plaintiff alleged Defendants Dedrick and Ginsburg later relocated, sold, or otherwise disposed of; (2) Plaintiff's constructive trust claim based on the alleged conversion of Plaintiff's property; and (3) Plaintiff's breach of fiduciary duty claim. (See, Mem. Op. & Order, [Docket No. 162], 14-20). Defendant Dedrick now moves for summary judgment, arguing that there are no genuine issues of material fact and Plaintiff has failed to present sufficient admissible evidence of conversion, the constructive trust claim is based upon the fatally flawed conversion claim, and Defendant Dedrick owed no fiduciary duty to Plaintiff. (Mem. in Supp., [Docket No. 190], 6). Moreover, Defendant Dedrick argues that even if there was a breach of fiduciary duty, Plaintiff suffered no damages, and that Plaintiff's claims are barred because they were litigated and decided in the marital dissolution proceedings in Minnesota state district court. (Id. at 6-7).

a.   **Conversion**

As set forth above, "[u]nder Minnesota law, conversion is defined as 'an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property.'" Reisdorf, 129 F. Supp. 3d at 779. Plaintiff's conversion claim against Defendant Dedrick is based on the same allegations as his conversion claim against Defendant Ginsburg, which are described above. (Amend. Compl., [Docket No. 17], 5-6). Namely, Plaintiff merely alleges that Defendant Dedrick contracted to use the E-Z Storage unit, placed some of Plaintiff's personal property in the unit, then stopped payment to E-Z Storage, after which Defendant

Dedrick, Defendant Ginsburg, E-Z Storage, or some combination thereof sold, relocated, or otherwise disposed of the property of Plaintiff which had been stored in the unit. (Id.).

In support of her Motion for Summary Judgment, Defendant Dedrick argues that Plaintiff has failed to establish the existence of the elements required to prove conversion at trial. (Mem. in Supp., [Docket No. 190], 7-8). Specifically, the Minnesota state district court ordered that Plaintiff alone was responsible for the cost of the E-Z Storage unit as of January 1, 2012, and that Defendant Dedrick would thereafter be held harmless as to the disposition of the personal property stored in the unit. Defendant Dedrick contends that she complied with the court's order and did not interfere with Plaintiffs' rights to the property in the E-Z Storage unit.

As already noted, the Minnesota state district court ruled that as of January 1, 2012, Plaintiff (not Defendant Dedrick) was solely responsible for the cost of maintaining the E-Z Storage unit. (Ginsburg Aff., Exh. 1, [Docket No. 185-1], 7). The initial unpaid balance for the E-Z Storage unit was for the rental fee for the period of January 6, 2012, through March 6, 2012. (Dedrick Aff., Exh. 4, [Docket No. 192-1], 18). Thus, the default and eventual sale of the contents of the unit that resulted from the unpaid balances on the E-Z Storage unit stemmed from unpaid fees that started after the date on which the Minnesota state court had already ruled that Defendant Dedrick's financial responsibility for the E-Z Storage unit had ended. In addition, in a later order, the Minnesota state court ruled that Defendant Dedrick had fully complied with the earlier order regarding the E-Z Storage unit. (Ginsburg Aff., Exh. 3, [Docket No. 185-1], 31-33). Accordingly, there is no admissible evidence in the record now before the Court that Defendant Dedrick interfered with Plaintiff's interest in any personal property that remained within the E-Z Storage unit.

In his Memorandum in Opposition to Defendant Dedrick's Motion for Summary Judgment, Plaintiff simply contends that "evidence adduced in discovery and otherwise shows clearly that although the storage company accepted payment on Mr. Kieffer's behalf at least once, it was at Ms. Dedrick's behest, and that of her counsel, that such payments were no longer accepted and all communications with Mr. Kieffer ceased, leading to the loss of his personal property." (Mem. in Opp., [Docket No. 213], 4). Plaintiff further merely alleges in his Memorandum that Defendant Dedrick "interfere[d] with the storage company's dealings" with Plaintiff and "instruct[ed] that they not communicate with him." (Id. at 7). He also simply alleges that Defendant Dedrick "unilaterally placed Mr. Kieffer's personal property in storage, without any authority a[t] the time, entered into a contract contrary to Mr. Kieffer's interests and without any authority for such, and was in complete control over what property was stored and ultimately lost." (Id. at 8).[2]

When challenging a motion for summary judgment, a nonmoving party may not rest on mere allegations in his pleadings; the nonmoving party must set forth specific facts, based on admissible evidence, showing the existence of a genuine issue. See, Forrest, 285 F.3d at 291. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas, 438 F.3d at 526-27. Plaintiff has provided no admissible evidence to support his claims that Defendant Dedrick instructed E-Z Storage not to communicate with Plaintiff. To the contrary, Defendant Dedrick has submitted to this Court a copy of a letter in which she informed E-Z Storage of Plaintiff's contact information so that E-Z Storage could communicate directly with Plaintiff regarding the contents of the E-Z Storage unit. (Dedrick Aff., Exh. 5, [Docket No. 192-1], 20).

---

[2] All of these mere allegations are in direct opposition to the undisputed factual record set forth in the orders of the Minnesota state district court in the underlying divorce proceedings already addressed above.

Plaintiff also argues that "whether the state court had any jurisdiction over the storage company" is a genuine issue of material fact that precludes summary judgment in Defendant Dedrick's favor. (Mem. in Opp., [Docket No. 213], 4). However, Plaintiff has not previously raised the issue of the jurisdiction of the Minnesota state court over E-Z Storage in this Court, and he concedes that it was not an issue in the Minnesota state court case. (See, Id. at 9). Nor has Plaintiff explained how such a jurisdictional question (even if it were properly now before this Court) would be relevant to the Minnesota state court's order holding that Defendant Dedrick was not required to make payments on the E-Z Storage unit after January 1, 2012. Therefore, even assuming solely for the sake of argument that the jurisdiction of the Minnesota state court over E-Z storage was somehow in question, it would not be a genuine issue of material fact in Plaintiffs' current claims against Defendant Dedrick that would prevent Defendant Dedrick from being entitled to judgment as a matter of law.

The Court finds that Defendant Dedrick has met her burden to offer sufficient admissible evidence to show that she is entitled to judgment as a matter of law on Plaintiff's conversion claim against her. The record contains no admissible evidence (and Plaintiff has offered no facts based on admissible evidence) to show that Defendant Dedrick in any way interfered with Plaintiff's rights to any personal property located within the E-Z Storage unit. In response, Plaintiff once again has offered only mere allegations and conclusions, which are not sufficient to defeat a motion for summary judgment.

Accordingly, this Court recommends **granting** Defendant Dedrick's Motion for Summary Judgment, [Docket No. 188], to the extent that it requests summary judgment in Defendant Dedrick's favor on Plaintiff's claim for conversion.

### b.  Constructive Trust

As set forth above, "[u]nder Minnesota law, a constructive trust arises in favor of the person equitably entitled to property whenever legal title is obtained through fraud, oppression, duress, undue influence, force, crime, or taking improper advantage of a confidential or fiduciary relationship." Hanson, 13 F.3d at 1253.

In his claim of constructive trust against Defendant Dedrick, as he did with Defendant Ginsburg, Plaintiff contends that Defendant Dedrick held the proceeds from the conversion of his property which had been kept in the E-Z Storage unit, or the market value of such, in a constructive trust for Plaintiff or for his benefit. (Amend. Compl., [Docket No. 17], 7-8). Plaintiff again offers no admissible evidence, however, that Defendant Dedrick obtained legal title to any of the personal property within the E-Z Storage unit "through fraud, oppression, duress, undue influence, force, crime, or taking improper advantage of a confidential or fiduciary relationship." See, Hanson, 13 F.3d at 1253. During his deposition, Plaintiff testified only that Defendant Dedrick rented the E-Z Storage unit in order to store some of Plaintiff's personal belongings after Plaintiff was incarcerated and during the marriage dissolution proceedings. (Stutzman Aff., Exh. 3, [Docket No. 191-1], 24).

The Court again finds that Defendant Dedrick is entitled to judgment as a matter of law regarding Plaintiff's request for a constructive trust. The record contains no admissible evidence (and Plaintiff has offered no facts based on admissible evidence) to show that Defendant Dedrick obtained legal title to any of the property stored in the E-Z Storage unit through improper means, as would justify the imposition of a constructive trust. Indeed, when Plaintiff earlier pursued relief in the Minnesota state district court claiming that Defendant Dedrick had failed to comply with the state court's order regarding maintaining the E-Z Storage unit, the Minnesota state court

specifically held that Defendant Dedrick had fully complied with the prior order, and she had no further obligation with regards to the E-Z Storage unit <u>after</u> January 1, 2012. (Ginsburg Aff., Exh. 3, [Docket No. 185-1], 31-33). Plaintiff now offers only mere allegations that Defendant Dedrick had ill intent when she originally placed the personal property into the E-Z Storage unit, and only simple allegations and conclusory statements are not sufficient to defeat a properly supported motion for summary judgment.

The record currently before this Court fails to provide any admissible evidence showing that Defendant Dedrick received any benefit from the sale of the personal property in the E-Z Storage unit such that imposition of a constructive trust would "prevent unjust enrichment" of Defendant Dedrick. <u>See</u>, <u>Wright</u>, 311 N.W.2d at 485.

Accordingly, this Court recommends **granting** Defendant Dedrick's Motion for Summary Judgment, [Docket No. 188], to the extent that it requests summary judgment in Defendant Dedrick's favor on Plaintiff's request for a constructive trust.

### c.  Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary duty, breach, causation, and damages." (Mem. Op. & Order, [Docket No. 162], 18-19) (citing <u>Padco, Inc. v. Kinney & Lange</u>, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989); <u>Hudson v. Snyder Body, Inc.</u>, 326 N.W.2d 149, 157 (Minn. 1982)).

Plaintiff alleged in his Amended Complaint that Defendant Dedrick

owed a fiduciary duty to [Plaintiff] and breached such duty insofar as providing RELS with their authority to disburse what would have otherwise been [Plaintiff's] proceeds from the sale of [the Garden Street property], or providing him with the documentation that would evidence that his proceeds were disbursed properly to satisfy perfected liens and/or judgments that were his sole liability.

(Amend. Compl., [Docket No. 17], 9-10). Plaintiff further alleged that Defendant Dedrick instructed or influenced Defendant RELS Title not to provide Plaintiff with documentation justifying disbursements made from the proceeds of the sale, so that Defendant Dedrick, among others, received the benefit of $86,500 from the sale which should otherwise have properly belonged to Plaintiff. (Id. at 9).

In denying Defendant Dedrick's initial Motion to Dismiss, the District Court held that Plaintiff had asserted sufficient facts to plausibly plead that Defendant Dedrick owed him a fiduciary duty due to their marital relationship, which may have been in existence at the time the alleged breach of fiduciary duty occurred.[3] (Mem. Op. & Order, [Docket No. 162], 19-20).  In support of her Motion for Summary Judgment, Defendant Dedrick argues that there is no longer any question as to whether or not a marriage-based fiduciary relationship was in existence at the time of the alleged breach of fiduciary duty. (Mem. in Supp., [Docket No. 190], 8).

Plaintiff clearly states that his "breach of fiduciary duty claim [against Defendant Dedrick] centers on the sale of real property located in Duluth, Minnesota in which he claims an interest." (Mem. in Opp., [Docket No. 213], 5). He also cites, as the basis for his fiduciary relationship with Defendant Dedrick, their marriage. (Id.). Indeed, "Minnesota common law acknowledges that the relationship between a married couple is fiduciary in nature." (Order, [Docket No. 162], 19) (citation omitted).

The record before the Court is clear that the marriage between Petitioner and Defendant Dedrick was finally dissolved on November 22, 2011. (Stutzman Aff., Exh. 1, [Docket No. 191-1], 3, 5). The proceedings involving the sale of the Garden Street property (the only real property at issue in the present case) did not begin until <u>after</u> the district court ordered the sale and clearly

---

[3] In his Amended Complaint, Plaintiff alleged that the dissolution of his marriage to Defendant Dedrick occurred in approximately November 2012 and the breach of fiduciary duty occurred between September 2012 and June 2013. (Mem. Op. & Order, [Docket No. 162], 19-20).

set forth Defendant Dedrick's sole responsibilities therein. (Id. at Exh. 2, [Docket No. 191-1], 6, 17). Therefore, as a matter of law, at the time of the sale of the Garden Street Property in June 2012, Defendant Dedrick did not have any fiduciary relationship with Plaintiff that stems from a marriage.

There is no genuine dispute of material fact, and Defendant Dedrick is entitled to judgment as a matter of law regarding Plaintiff's breach of fiduciary duty claim against her. The evidence in the record clearly shows that at the time of the events upon which Plaintiff entirely bases his claim of a breach of fiduciary duty, Defendant Dedrick owed no marriage-based fiduciary duty to Plaintiff as he alleged in his Amended Complaint.

Accordingly, the Court recommends **granting** Defendant Dedrick's Motion for Summary Judgment to the extent that it seeks summary judgment on Plaintiff's claim that Defendant Dedrick breached a fiduciary duty to Plaintiff related to the sale of the Garden Street property.

## V.   DEFENDANTS J.S. REALTY AND SATHERS' JOINT MOTION FOR SUMMARY JUDGMENT, [Docket No. 193], AND DEFENDANTS RELS TITLE AND WARREN'S JOINT MOTION FOR SUMMARY JUDGMENT, [Docket No. 200]

The sole remaining claims against Defendant J.S. Realty, Defendant Sathers, Defendant Warren, and Defendant RELS Title are Plaintiff's claims of breach of fiduciary duty. (See, Mem. Op. & Order, [Docket No. 162], 18). Because all of these claims are exclusively related to the sale of the Garden Street property, the Court addresses them together.

In his Amended Complaint, Plaintiff asserts in a conclusory fashion that because Defendant Sathers and Defendant J.S. Realty were engaged as the seller's agent in the sale of the Garden Street property, they too owed Plaintiff a fiduciary duty. (Amend. Compl., [Docket No.

29

17], 8). Similarly, Plaintiff contends that because Defendant Warren and Defendant RELS Title were engaged to work in the seller's interest as the closing agent or settlement agent for the sale, they also owed Plaintiff a fiduciary duty. (Id.). Plaintiff alleges that Defendant RELS Title's denial of Plaintiff's requests for documentation to justify or further explain the disbursements made out of the proceeds from the sale of the Garden Street property violated the alleged fiduciary duty owed to Plaintiff by Defendant Warren and Defendant RELS Title. (Id. at 9-10). Similarly, Plaintiff asserts that Defendant J.S. Realty and/or Defendant Sathers "instructed or influenced RELS not to provide any of the requested documentation to him and/or little, if any, such documentation exists and that this fact was not to be revealed, resulting in [Defendant J.S. Realty and/or Defendant Sathers] receiving the benefit of $86,500 in proceeds due [Plaintiff]." (Id. at 9). Plaintiff alleges that these instructions by Defendants J.S. Realty and Sathers breached their fiduciary duty to Plaintiff by authorizing Defendant RELS Title to disburse proceeds from the sale of the property that should have otherwise gone directly to Plaintiff. (Id. at 9-10).

Defendants J.S. Realty and Sathers argue that Plaintiff has failed to establish the existence of a fiduciary duty, a breach, or damages, all essential elements of a claim of breach of fiduciary duty. (Mem. in Supp., [Docket No. 195], 2-3). A failure on any of these elements will warrant summary judgment in Defendants J.S. Realty and Sathers' favor. See, Celotex Corp., 477 U.S. at 322-23. Defendants J.S. Realty and Sathers also claim that Plaintiff cannot show that he was damaged by the alleged breach of fiduciary duty because the disbursement satisfied the Minnesota state court's order in the underlying divorce proceeding on delegation of the proceeds from the sale. (Mem. in Supp., [Docket No. 195], 2-3). Defendants Warren and RELS Title similarly argue that they owed Plaintiff no fiduciary duty, they did not breach any such duty, and review of the propriety of the disbursement of proceeds pursuant to the Minnesota state court's

underlying order in the divorce proceeding is prohibited by the doctrine of collateral estoppel and the <u>Rooker-Feldman</u> doctrine. (Mem. in Supp., [Docket No. 202], 2).

Plaintiff responds in his Memorandum in Opposition that the propriety of the disbursement is not an uncontroverted fact and that the dispute over the disbursement is a genuine issue of material fact that renders summary judgment inappropriate.[4] (Mem. in Opp., [Docket No. 214], 2-5). Specifically, Plaintiff argues that the Minnesota state court order instructed disbursement to the IRS for "tax liens incurred by" Plaintiff but that no such tax liens existed, because the liens cited in the disbursement were not "tax liens" and were not "incurred by" Plaintiff, so disbursement to the IRS was therefore erroneous. (<u>Id.</u> at 2-4).

Upon review of the undisputed factual record, this Court finds it unnecessary to consider the moving parties' arguments in detail or address the propriety of a review of the state district court's disbursement order, as the issue of whether Plaintiff can show any damages whatsoever here may be more simply resolved, thus demonstrating a failure on an essential element of a breach of fiduciary duty claim. Essentially, Plaintiff's complaint is that he did not receive any of the proceeds from the sale of the Garden Street property, a failure he asserts resulted from Defendants Warren, Sathers, J.S. Realty, and RELS Title breaching their respective fiduciary duties to him. (<u>See</u>, Amend. Compl., [Docket No. 17], 8-10). He contends that the foregoing parties' breach denied him the benefit of the $86,500 he claims were due to him as his share of the proceeds. (<u>Id.</u> at 9-10).

However, the record is clear, and Plaintiff does not dispute, that the Garden Street property sold for $173,000, nor does Plaintiff dispute that this amount was a fair price for the

---

[4] Plaintiff also argues that this Court should deny the Motion for Summary Judgment "for substantially the same reasons that the [Defendants'] prior motion to dismiss the claim was denied." (Mem. in Opp., [Docket No. 214], 5). However, this Court notes that the District Court's Order on the Motions to Dismiss did <u>not</u> address any motions by Defendant J.S. Realty or Defendant Sathers to dismiss the claims against them of breach of fiduciary duty; Defendants J.S. Realty and Sathers did not move to dismiss the claims at that time. (Order, [Docket no. 162], 18).

property. (Warren Aff., Exh. 18, [Docket No. 203], 67). The Minnesota state court ordered that prior to the proceeds being divided between Plaintiff and Dedrick, the proceeds would be used to pay "any property taxes due and owing on the property, realtor's commission and the usual and customary costs associated with the sale of a house." (Ginsburg Aff., Exh. 1, [Docket No. 185-1], 12). The $86,500 Plaintiff claims were due to him is half of the gross proceeds, which Plaintiff would not have received even without <u>any</u> disbursements such as property taxes, realtor's commission, and other usual and customary costs which would have been subtracted from the gross amount before division between Plaintiff and Defendant Dedrick. Regardless, even if none of the aforementioned costs were subtracted and no other disbursements were made, the Minnesota state district court also ordered that Plaintiff's half "shall be used to pay any tax liens or restitution liens/judgments incurred by" Plaintiff. (<u>Id.</u>).

Plaintiff takes issue only with money being disbursed to the IRS ostensibly to satisfy tax liens instead of being disbursed directly to Plaintiff. (Amend. Compl., [Docket No. 17], 9-10; Mem. in Opp., [Docket No. 214], 2-4). Plaintiff does not acknowledge in his pleadings before this Court that his half of the proceeds from the sale of the Garden Street property were also earmarked by the Minnesota state district court to satisfy Plaintiff's restitution obligations arising from his criminal conviction prior to any disbursement being made to Plaintiff personally. Plaintiff argues only that certain money disbursed to the IRS should have gone to Plaintiff.

According to a DOJ Notice of Lien for Fine and/or Restitution submitted to this Court by Defendant Warren, in August 2009, the DOJ had recorded a lien against the Garden Street property in the amount of $152,750.00 at a rate of interest of 0.47%. (Warren Aff., Exh. 4, [Docket No. 203], 35). Plaintiff has offered no admissible evidence in the record now before this Court that this was paid or otherwise satisfied prior to the sale of the Garden Street property in

June 2012. Therefore, even if no money from Plaintiff's half of the gross proceeds from the sale had been disbursed for any other obligations the Minnesota state district court identified in its underlying divorce proceedings order, Plaintiff's portion of the proceeds would nevertheless have been completely consumed by his outstanding restitution amount arising from his criminal conviction.

Accordingly, even viewing all the admissible evidence in the record in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff cannot show that any alleged disbursements to the IRS deprived him of the personal receipt of any proceeds from the sale of the Garden Street property.

Because damages caused by a breach of fiduciary duty are an essential element of such a claim and because Plaintiff cannot show by any admissible evidence that he suffered any actual damages by the alleged breach of fiduciary duty claims he makes against Defendants Sathers, Warren, J.S. Realty, and RELS Title (*i.e.,* that Plaintiff did not personally receive any proceeds from the sale of the Garden Street property), Plaintiff's claims must fail. See, Celotex Corp., 477 U.S. at 322-23.

Therefore, this Court recommends **granting** the Motions for Summary Judgment brought by Defendants Sathers, J.S. Realty, Warren, and RELS Title, [Docket Nos. 193, 200].

### III.    CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Ginsburg's Motion for Summary Judgment, [Docket No. 181], be **GRANTED;**

2. Defendant Dedrick's Motion for Summary Judgment, [Docket No. 188], be **GRANTED;**

3. Defendant J.S. Realty, Inc., and Defendant Sathers' Motion for Summary Judgment, [Docket No. 193], be **GRANTED;** and

4. Defendants RELS Title and Warren's Motion for Summary Judgment, [Docket No. 200], be **GRANTED.**

Dated: February 22, 2017                    s/Leo I. Brisbois
                                            The Honorable Leo I. Brisbois
                                            United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.